LEFLORE COUNTY *v.* STATE, EX REL., ETC.

1. MANDAMUS. *Stock law. Fence between counties. Code* 1892, § 2061.

    Mandamus lies to compel a board of supervisors to perform the duty imposed by § 2061, code 1892, as to jointly building and maintaining a fence on or near the county line, to prevent stock straying from a county in which the stock law has not been adopted into an adjoining county where it is in force.

2. SAME. *Petition. Sufficiency of allegation.*

    In a petition for mandamus, at the instance of a county that has adopted the law, to compel an adjoining county to join in building a line fence, it is not essential that it should be distinctly alleged that the adjoining county has not adopted the law. As the law is not in force in any county until adopted, the petition will be sufficient as to this, if it avers that a fence between the two counties is necessary, to prevent stock straying from the adjoining county into the county adopting the law.

3. COUNTIES. *Fences between. Legislative control.*

    It is within legislative control to provide for a joint fence between counties in such case. The benefits are mutual, and it cannot be said that a burden is unwarrantably imposed on the county declining to act. In our arrangement of counties, each must be allowed to act in such matters, and the inconvenience, if any, resulting from contiguity of territory, affords no ground for legal complaint.

4. SAME. *Validity of the law. Practical difficulties. Not anticipated.*

    It is not a valid objection to the law that practical difficulties exist in reference to the location of the fence and procuring the site for it. It will be time enough to deal with these if encountered. They will not be anticipated.

5. STOCK LAW.   *Electors.   Constitutional qualifications; not applicable.*

The provisions of the constitution and the election ordinance as to registration and qualification of electors have no application to elections under the stock law. The legislature has plenary power over the subject.

6. JOINT FENCE.   *Manner of raising funds.   Code 1892, § 2062.*

In a proceeding by mandamus, at the instance of a county which has adopted the law, to compel an adjoining county, which has not done so, to unite in erecting a line of fence, consideration of § 2062, code 1892, as to the manner of raising money to build and maintain the fence, is not involved.

7. SAME.   *Obligation on both counties.   Refusal of one.   Right of the other.*

The fact that one county, after refusal by the other to do its part, proceeds alone, and makes provision for erecting part of the fence, will not relieve the other county from its obligation. If one county refuses to co-operate, the other may build the fence and recover half the expense. The law charges each with half the expense, and there is no way to escape it.

FROM the circuit court of Leflore county.

HON. R. W. WILLIAMSON, Judge.

Mandamus by the state, on the relation of the attorney-general, against the board of supervisors of Leflore county. The purpose is to compel that county to unite with Carroll county in building a line fence between the two counties, such fence being made necessary by the adoption of the stock law in Carroll county.

The petition alleges that an election was held in Carroll county August 16, 1892, under chapter 47, code 1892, to determine whether the stock law should be declared in force, and that said election resulted in favor of putting the law into operation; that the board of supervisors had declared that the law should be in effect after February 15, 1893; that the board of supervisors of Leflore county had been notified of the result of the election; that Leflore is affected by the adoption of the law in Carroll county, and that, in order to secure its operation, a fence between the two counties is necessary to prevent stock from Leflore county trespassing in Carroll; that the board of supervisors of Carroll county had

attempted, unavailingly, to confer with the supervisors of Leflore county in regard to the erection of the fence; that Carroll county had proceeded to award contracts for the erection of one-half the fence, which is now being built; that the board of supervisors of Leflore county has failed and refused to take any official action in reference to building the fence or defraying any part of the expense of the same. The petition was filed February 1, 1893.

The defendants demurred to the petition on various technical grounds. Among other things, it is assigned as cause of demurrer that the petition fails to show that Leflore county had not adopted the stock law; that it fails to show that the election had been properly ordered and held in Carroll county; that it fails to show that any provision had been made, or could be made, to secure a right of way upon which to build the fence; that the issuance of a writ of mandamus is not authorized under the facts stated in the petition, and that chapter 47, code 1892, in relation to fences and stock, is unconstitutional.

The demurrer was overruled, and, defendants declining to answer, judgment final was entered granting the prayer of the petition. Defendants appeal. The opinion contains a further statement of the case.

*A. McC. Kimbrough,* for appellant.

1. The petition does not show any sufficient order of the board for the election in Carroll county. The powers conferred on the board by chapter 47, code 1892, are extraordinary, and it must appear affirmatively that every thing required was done, and at the proper time and place.

2. Section 2061, code 1892, provides that the counties shall jointly build and keep in repair fences on or near the county line. Here the petition alleges that Carroll county alone is building one-half of said line fence, which it was not authorized to do. There is no authority to compel Leflore county to aid in doing this. Mandamus only lies where there is a

specific right or a positive duty, and where there is no other specific legal remedy. Code 1892, § 2846; 14 Am. & Eng. Enc. L., 94, note 2 ; 2 Chand. (Wis.), 250.

3. The petition fails to show that Leflore county had not adopted the stock law, and the demurrer should have been sustained for that reason. 14 Am. & Eng. Enc. L., 222, 223.

4. Chapter 47, code 1892, is unconstitutional. Section 2056 establishes a .property qualification for electors, and § 2057 provides, as the only qualification of electors, that they shall be resident freeholders or leaseholders for a term of three years or more, while the constitution provides entirely different qualifications. Section 241 of the constitution gives the right of franchise only to male inhabitants, who must possess the qualifications therein mentioned. See, also, §§ 244 and 249, the latter providing for the registration of voters as an essential qualification. The law under consideration permits men, women, minors, and even felons and aliens, to vote. It disfranchises constitutional electors by. fixing a property qualification.

This law also violates § 17 of the constitution, which provides that private property shall not be taken for public use except on due compensation being first made in a manner prescribed by law. Here there is no manner prescribed for making compensation to the owners of land for the right of way. The law also violates that section of the constitution which provides that no person shall be deprived of property without due process of law and without notice of trial. *Donovan* v. *Vicksburg*, 29 Miss., 247. Here Carroll county is attempting to coerce Leflore county to build the fence which is made necessary without any participation by the citizens of Leflore county. This is taxing Leflore county to protect property in Carroll county. It is taxation without representation.

*A. G. Paxton*, on the same side.

1. Mandamus only lies to enforce performance of an act

which the law specially enjoins as a duty. Section 2061, code 1892, provides that counties effected by putting into operation the stock law shall *jointly* build or keep in repair line fences.

2. Section 2062 provides that the board may levy taxes only on specific lands to provide for building the fence. If the law is of any force, the board is prohibited from levying taxes generally for this purpose. The law taxing specific lands is unconstitutional. It is not equal and uniform. Const., § 112.

In undertaking to declare that benefits will result from the location of the fence, the legislature has not only transcended its powers in acting as a judicial tribunal, but has concluded the citizen as to any claim for damages for taking his property. 3 How., 240; 34 Miss., 241; 36 *Ib.*, 310; 37 *Ib.*, 182; 39 *Ib.*, 385; 65 *Ib.*, 335; 68 *Ib.*, 539.

3. No means are provided for the expense of locating the fence. An expensive survey must be made, for which there is no provision. No means are provided for the acquirement of the right of way. It must be built over private property, which cannot be taken until paid for. Const., § 17.

4. This section of the constitution provides that compensation shall be made *in the manner to be prescribed by law*, and no manner is prescribed by the statute under consideration. The court will not compel the board of supervisors to become trespassers in attempting to take private property which it has no authority to take.

5. The chapter of the code under which the election was held is unconstitutional for other reasons. Section 2057 of the code, as to ballots, is utterly vague. The voter could not intelligently mark his ballot, as contemplated by § 246 of the constitution and § 4 of the election ordinance.

The statute assumes to confine the vote to freeholders and leaseholders. This cannot be done. Cooley's Const. Lim., 758, 774, 775; 38 Miss., 652; 58 *Ib.*, 738. Females, infants and aliens are made qualified voters, which is not allowable. This is not a matter coming within the police power. Black

on Const. Prohibitions, 64; 3 Am. & Eng. Enc. L., 747, note
1; 18 *Ib.*, 739, 748; 2 Kent's Com., 441, and notes; 9 Mich.,
285; Cooley's Const. Lim., 713; 51 Miss., 738.

Voters provided for are not registered as required by § 242
of the constitution. An entirely separate registration is re-
quired, owing to the different qualifications of the voters
allowed to participate. On the other hand, persons who are
qualified electors under the constitution, could not vote at an
election under this statute. See § 2056, code 1892. Section
249 of the constitution prescribes registration as an essential
qualification to vote at any and all elections.

*Percy R. Somerville*, for appellee.

1. Mandamus is the appropriate remedy. Section 2061,
code 1892, prescribes a duty, and vests no discretion. See 5
Nev., 341; 2 Va. Cas., 9, 499; 2 Pick., 419; 5 Ohio St., 497;
23 Fla., 632; 81 Pa., 132; 36 Cal., 595; 47 Md., 145; 48 Ill.,
233; 80 Ind., 478; 63 Miss., 135.

The wisdom of the statute is not in question. It is a part
of the written law, and will be enforced. If we grant appel-
lant's contention is correct, that the general funds of the
county cannot be used to build the fence, still, we contend
that § 2062, code 1892, is unobjectionable.

As to the right to levy taxes on certain property specially
benefited, see 2 Kent's Com., 340; 5 Vroom (N. J.), 227; 3
Fairfield (Me.), 222; 3 Paige (N. Y.), 73; 47 Miss., 713;
*Vicksburg Bank* v. *Worrell*, 67 Miss., 47.

If the legislature possessed the power to pass a general
stock law, it had the power to make its operation dependent
upon any contingency it might devise. *Schulherr* v. *Bordeaux*,
64 Miss., 59.

If a survey should be necessary, the board of supervisors
would have ample power to make it under the general chap-
ter on that subject.

2. This is not an election contemplated by the constitution,
and registration was not necessary.

3. The police power is ample to authorize preventing stock running at large.   Cooley's Const. Lim., 588; Dillon on Mun. Cor., 345; 15 N. W. Rep., 437; 51 Miss., 738; *Julienne* v. *Jackson,* 69 *Ib.,* 34.

The petition sets forth a case authorizing the issuance of the writ, and shows the necessity therefor.

*W. F. Stevens,* on the same side.

1. Mandamus is the proper remedy.   High's Ex. L. Rem., 413; Moses on Mandamus, 102, 104, 126, 152, 155 ; 63 Miss., 135.   No discretion is vested in the board of supervisors as to the duty in question, which is a plain and ministerial one. Code 1892, § 2061.

2. The board has ample power to levy taxes necessary to meet the expenses incident to building the fence.   The legislature may impose local taxation in proper cases.   Therefore, § 2062 of the code is not objectionable.   27 Miss., 209; 38 *Ib.,* 653; 48 *Ib.,* 713; Cooley's Const. Lim., 617, 619.

3. The provisions of the constitution in relation to the qualification and registration of voters have no application. They apply only to such elections as are contemplated by that instrument.

4. By the general police power, persons and property are subject to such restriction and burdens as are necessary to secure general health, comfort and prosperity.   Cooley's Const. Lim., 708; 4 Blackstone's Com., 162; 27 Vt., 140; 29 Miss., 53; 94 U. S., 113; 51 *Ib.,* 735; *Julienne* v. *Jackson,* 69 Miss., 34.

5. The power to enact the law included the power to determine the conditions upon which it should become operative. 38 Miss., 653; 51 *Ib.,* 744; *Schulherr* v. *Bordeaux,* 64 *Ib.,* 59.

6. The election ordinance, cited by opposite counsel, has no application.   It is restricted in its application to such political elections as were therein contemplated, and no further. It was never intended to trammel the discretion of the legislature in reference to matters committed exclusively to it.

7. In response to the suggestion that there is no provision for a condemnation of the right of way for the fence, we submit that this is a contingency that may never arise. But the board of supervisors would have ample power, under the chapter on eminent domain.

The statute is free from all objection as to its constitutionality.

*L. M. Southworth,* on the same side.

CAMPBELL, C. J., delivered the opinion of the court.

The petition sufficiently shows that an election was ordered and held in Carroll county to determine whether the " stock law " should be declared in force in that county, and that the result was in favor of it, and that the board of supervisors, in pursuance of the result of the election, declared that the stock law should be in force in said county from the fifteenth of February, 1893. Leflore is an adjoining county, and, while it is not distinctly and positively averred, as good pleading requires, that Leflore county has not adopted the stock law, it sufficiently appears, in view of the fact that the law is not in force in any county until it has been adopted, and the language of the petition is strongly suggestive of the fact that Leflore has not adopted the law, since the averment is that a fence between the two counties is necessary to prevent stock from Leflore county straying therefrom and trespassing in Carroll county.

Mandamus is an appropriate remedy to compel the performance by a board of supervisors of the duty imposed by § 2061 of the code of 1892, as to jointly building and keeping in repair a fence on, or near, the county line to prevent stock straying from one county, in which the stock law is not in force, into the other, in which it is in force.

The object of that section is to make the county which adopts the stock law, and the county which does not, each chargeable with the burden of erecting and maintaining the

fence necessary to meet the conditions.    By adopting the law, the people of the county in which the law is put in force are entitled to cultivate their lands without the protection of fences.    Their farms are to be " turned out," and their stock fenced in, so as to keep them off the land of others. · Their lands are to be protected from stock, not by fences, but by law.    Without a fence to prevent stock from straying from a county not having the stock ·law into one that has, the owners of stock thus straying would be the sufferers from seizure of their stock by persons depredated on by them. Hence the provision for a fence about the county line, and, as it is rendered necessary for the protection of owners of stock in a county not having the stock law, and they will be benefited, part of the expense is chargeable on that county, and since this necessity has arisen from the determination of the other county to adopt the stock law, part of the expense is chargeable to it.    The law is intended to effect justice in this matter.    Instead of declaring that one county may put the stock law in force and enjoy its full benefits, without further charge than the necessity of making needed provision for confining stock in that county, whereby the stock in contiguous counties would, from their instinct to wander, be continually exposed to seizure, and to be dealt with under the law as trespassing animals, entailing loss upon their owners, and producing endless vexation and disturbance; in order to avoid these evils, the provision was made for a fence, at or near the county line, to be built and repaired at the joint expense of the adjoining counties.    Instead of being a burden unwarrantably imposed on the county not adopting the stock law, it is conferring a benefit on it, in requiring the other county to bear half of the expense of the fence so necessary to keep stock from straying into danger, and loss to their owners.    True, but for the action of one county adopting the stock law, a necessity for the fence between the counties would not exist, but, in our arrangement of counties, the right of each to act independently of others in such

matters- as authorized by law, must be recognized and sub-
mitted to, and the inconvenience, if any, resulting from con-
tiguity of territory is an unavoidable incident not affording
cause for legal complaint. The matter is within the control
of the legislature, and the scheme provided is as above set
forth, and whether the wisest or not is not for the courts to
say.

It is suggested that practical difficulties exist in reference
to the location of the fence between the two counties, and
procuring the site for it. If this be true, it will be time
enough to deal with the difficulties when encountered. They
should not be anticipated. It is probable that a hearty ac-
ceptance of the law, and the result of the action of Carroll
county, by Leflore, and a determination by all concerned to
discharge duty, as imposed by the law, will remove all ob-
stacles, and lead to the building of the needed fence. Cer-
tainly it appears to us to be a matter of far more concern to
Leflore to have that fence erected than to Carroll, as a con-
sideration of the practical consequences to owners of stock
in Leflore, if the fence shall not be built, must suggest.

The provisions of the constitution as to qualified electors,
and registering electors, and the election ordinance adopted
by the constitutional convention, have been appealed to as
rendering unconstitutional the provisions of the code as to a
stock law. We reject this view. There is nothing in the
constitution or ordinances at war with the stock law. The
legislature might pass a stock law for one or all the counties
without a vote of the people on the subject. It might em-
power each board of supervisors to declare such law in force,
without vote or petition of the people, and, having plenary
power over the subject, was authorized to prescribe the con-
ditions on which the boards might act.

A consideration of § 2062 of the code, as to the manner of
raising money to defray the expenses of building and repair-
ing fences, is not called for now. That will arise hereafter.
The question now is, whether Leflore must join Carroll in

building a fence, not how it is to be paid for. That it is a county burden, and to be borne as other county expenses, is clear, unless a levy may be made only on specific lands, as provided by § 2062. The proposition that the boards of supervisors may not raise money for fences in any other way than as provided by that section is not maintainable. The charge is upon the county, with power in the board to designate certain lands to bear the expense instead of the county. Preceding sections impose the burden. Section 2062 confers power to limit it as prescribed.

The objection that Carroll has gone on and made provision for part of the fence is not a reason for refusal by Leflore to do its part. The counties should confer and co-operate in the work, but if one will not, when applied to, the other may proceed alone, and call on the other for half the reasonable cost. The law charges each county with half the expense, and there is no way to escape it.

*Affirmed.*